NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LUKE G., | ) |
| | ) Supreme Court No. S-16972 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-16-00131 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, | ) AND JUDGMENT[*] |
| DEPARTMENT OF HEALTH & | ) |
| SOCIAL SERVICES, OFFICE OF | ) No. 1719 – April 10, 2019 |
| CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Ruth Botstein, Senior Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, and Richard Stinson, Public Advocate, Anchorage, Guardian Ad Litem.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

---

[*]    Entered under Alaska Appellate Rule 214.

1.     Luke G.[1] appeals the termination of his parental rights to his daughter Mallory, now age 6. Luke was incarcerated during the entirety of Mallory's child in need of aid (CINA) case. He argues on appeal that the superior court's conclusion that the Office of Children's Services (OCS) made reasonable efforts to reunify him with Mallory was erroneous because OCS failed to contact him in prison. Because OCS communicated with Luke and involved him in the CINA proceedings, because Luke received some reunification services, and because Luke did not take full advantage of opportunities to address his longstanding substance abuse issues, we affirm the superior court's decision.

2.     Luke's criminal history dates back at least to 2009 and includes repeated probation violations for drug use. In February 2016 Luke led police on a high-speed chase with Mallory and Tonya G., Mallory's mother, in the car. He was arrested and sentenced to three years' imprisonment for "felony eluding." After the chase Tonya admitted to the police that she had recently used heroin, and OCS received a report of parental substance abuse. Tonya did not appear for a team decision meeting in June 2016, and Mallory was taken into OCS custody. Tonya ceased engaging in the case, and Mallory was placed with Tonya's parents, who plan to adopt her.[2]

3.     Luke remained incarcerated at Spring Creek Correctional Facility (Spring Creek) throughout the CINA case. The OCS caseworker assigned to this case prepared a joint case plan for Luke and Tonya in August 2016. OCS's principal goal for Luke, as reflected in the case plan, was that he obtain substance abuse treatment while

---

[1]     We use pseudonyms to protect the privacy of the parties.

[2]     Tonya's parental rights were terminated by the superior court. She does not appeal.

at Spring Creek. It also directed him to comply with prison rules, complete parenting classes, write to Mallory, and maintain contact with his caseworker.

4. The case plan identified several goals and action items for the caseworker, and most of them were focused on Tonya. When, early in the case, Tonya stopped engaging and could not even be found, the caseworker did not shift her efforts toward Luke. The caseworker's only duty under the case plan regarding Luke was to contact his probation officer at Spring Creek, but she never did. On cross-examination by Luke's attorney at the termination trial, the caseworker did not even recall assigning herself this duty in the case plan.

5. It is troubling that an OCS caseworker could be so unfamiliar with a case plan she wrote that she would not recall one of her primary duties under it. But we consider OCS's reunification efforts in "the totality of the circumstances."[3] We have repeatedly held that "the scope of OCS's duty to make reasonable efforts is affected by a parent's incarceration."[4] We have affirmed reasonable efforts findings when OCS caseworkers did not visit incarcerated parents but maintained contact through other means.[5]

6. In this case, the OCS caseworker's unrebutted testimony was that she sent Luke "six to seven items in the mail" regarding the case. OCS also ensured that

---

[3] *Tara U. v. State, Dep't. of Health & Soc. Servs., Office of Children's Servs.*, 239 P.3d 701, 705 (Alaska 2010).

[4] *See, e.g., Duke S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 433 P.3d 1127, 1136 (Alaska 2018) (quoting *Barbara P. v. State, Dep't. of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1262 (Alaska 2010)) .

[5] *See, e.g., S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1127 (Alaska 2002) (noting that caseworker sent a letter to incarcerated father asking about available programs and progress on his case plan).

Luke was able to participate telephonically in case reviews. While the OCS caseworker missed her own mark by failing to contact Luke's probation officer, she did communicate with Luke in other ways.

7. Luke did not adhere fully to his case plan; for example, he was instructed to comply with Department of Corrections (DOC) rules but instead accrued several behavioral infractions during his first months at Spring Creek. Most significantly, Luke declined substance abuse services when they were first offered by DOC. Luke should have availed himself of all substance abuse services at Spring Creek. He was offered a substance abuse assessment in October 2016 — he declined. Luke later agreed to an assessment in April 2017; at that time Spring Creek did not offer in-facility substance abuse treatment. But whether Spring Creek could later offer treatment or Luke needed to pursue treatment upon his release, completing a substance abuse assessment was a prerequisite.

8. We have established that services provided by DOC "count toward the reasonable efforts expected of OCS."[6] As explained above, DOC offered Luke a substance abuse assessment, but he declined to participate in it; offering the assessment counts as one reasonable effort. Luke did participate in DOC classes in anger management, criminal thinking, and parenting, and those count as reasonable efforts. OCS permitted his sister to bring Mallory to Spring Creek for multiple in-person visits. The OCS caseworker correctly identified a years-long pattern of substance abuse as Luke's main obstacle to reunifying with Mallory, and Luke had access to substance abuse services while at Spring Creek. Given the critical nature of Luke's substance abuse, Luke needed to take full advantage of the services available in prison so that he could become a capable, sober, and safe parent after his release. The superior court did

---

[6] *Duke S.*, 433 P.3d at 1136.

not err in considering his refusal to participate in the Spring Creek substance abuse assessment and in concluding that OCS made reasonable efforts.

9.      We AFFIRM the superior court's order terminating Luke's parental rights to Mallory.